# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES BOTCH, | CIVIL ACTION |
| *Plaintiff*, | |
| v. | No. 17-cv-4586 |
| NANCY A. BERRYHILL, | |
| *Defendant*. | |

Goldberg, J.                                                                                                                May 28, 2019

## **Memorandum Opinion**

Plaintiff, James Francis Botch, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of the Acting Commissioner of the Social Security Administration (the "Commissioner"), wherein Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act was denied. For the reasons set forth below, I will adopt United States Magistrate Judge Thomas J. Rueter's Report and Recommendation (R&R), vacate the decision of the Administrative Law Judge ("ALJ") and remand this matter to the Commissioner for further proceedings.

## I.    BACKGROUND

I incorporate the factual and procedural history as set forth in Judge Rueter's R&R, and recount only the facts relevant to the pending objections.

On April 28, 2014, Plaintiff filed an application for disability insurance benefits, alleging a disability beginning on October 1, 2013. (R. 117–23.) After Plaintiff's claim was denied, he requested a hearing, which was held on April 4, 2016. (R. 25–53, 67–74.) On July 8, 2016, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or

1

medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (R. 14–16.) Plaintiff's request for review was thereafter denied. (R. 1–7, 114–16.)

On March 9, 2018, Plaintiff filed his brief and statement of issues in support of his request for review in this Court. (Pl.'s Br., ECF No. 9.) Following the filing of the Commissioner's response brief and Plaintiff's reply brief, I referred this case to Judge Rueter for an R&R. (Order, Apr. 23, 2018, ECF No. 12.) On July 31, 2018, Judge Rueter issued his R&R, recommending that Plaintiff's request for review should be granted. (R&R, July 31, 2018, ECF No. 14.) On August 17, 2018, the Commissioner filed several objections to the R&R. (Objections to R&R, ECF No. 18.) On August 24, 2018, Plaintiff filed his response to the Commissioner's Objections. (Resp., ECF No. 20.)

For the reasons stated below, I will adopt Judge Rueter's R&R, and overrule the Commissioner's objections.

## II.   STANDARD OF REVIEW

The role of a district court on judicial review of the Commissioner's social security decision is to determine whether there is substantial evidence to support the findings. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Substantial evidence is defined as the relevant evidence which a reasonable mind might accept as adequate to support a conclusion. Pierce v. Underwood, 487 U.S. 552, 565 (1988); Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000). It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence. Id.

A district court is not permitted to reweigh the evidence of record or substitute its own conclusion for that of the ALJ. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Upon appeal

to this Court, the Commissioner's factual determinations, if supported by substantial evidence, shall be conclusive. The conclusiveness applies both to findings of fact and to inferences reasonably drawn from that evidence. Fargnoli, 247 F.3d at 38 ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.").

## III. DISCUSSION

Presently before me are the Commissioner's objections, which present five separate issues for my review, including whether Judge Rueter erred by: (a) finding that the ALJ did not develop a full and fair record; (b) concluding that the ALJ erred in finding that Plaintiff did not meet or equal Listings 12.05 and 12.06; (c) conducting a *de novo* analysis; (d) improperly reweighing expert evidence; and (e) improperly concluding that the medical records were inconsistent. I will address each objection in turn.

### A. The ALJ's Duty to Develop the Record

Judge Rueter found that the ALJ did not satisfy his duty to develop a full and fair record because the ALJ (a) failed to act on the recommendation for IQ testing made by Dr. Joseph Primavera, Ph.D., the consultant psychologist; and (b) failed to explain the internal inconsistencies in the medical records that the ALJ relied upon in his analysis. (R&R at 13–15.) The Commissioner objects, arguing that (a) the record did not need to be developed because Plaintiff never alleged a cognitive impairment at any stage of the proceeding, and (b) the ALJ did not have a heightened duty to develop the record because Plaintiff was represented by a non-attorney representative. (Objections to R&R at 3–5.) Plaintiff responds that Judge Rueter properly recognized that the ALJ has a duty to develop the record regardless of whether he was represented by an attorney. (Resp. at 2–4.)

3

It is well-established that the ALJ has a duty to develop a full and fair record in social security cases. See Ventura v. Shalala, 55 F.3d 900 (3d Cir. 1995); 20 C.F.R. § 404.1512(d). This duty is "most acute where the claimant is unrepresented." Turby v. Barnhart, 54 F. App'x 118, 122 (3d Cir. Dec. 23, 2002). As part of this duty, the ALJ must consider both impairments (a) that are claimed by the Plaintiff, and (b) "about which we [the Commissioner] receives evidence," even where a plaintiff does not list a condition in an application for benefits. 20 C.F.R. § 404.1512(a); see also McShea v. Schweiker, 700 F.2d 117, 119 (3d Cir. 1983) ("It is true that plaintiff did not list alcoholism as one of his disabling conditions. That, however, does not excuse the Department of Health and Human Services from scrutinizing a condition that was so directly brought to its attention.").

The Commissioner's argument—that there was no such duty here because Plaintiff purportedly did not specifically allege a cognitive impairment—is belied by the record in that the ALJ received and considered evidence relating to the intellectual disability criteria. Because the Commissioner received and considered evidence relating to Plaintiff's intellectual impairments (e.g., mental health records and family testimony), I agree with Judge Rueter that the ALJ had a duty to develop the record, specifically relating to Dr. Primavera's recommendation as to Plaintiff's IQ score. (R. 15–16.)

I also note that the Commissioner's citations in support of her position are unavailing. The Commissioner's citation to 20 C.F.R. § 404.940 is inapposite because this regulation concerns the disqualification of the ALJ based on bias, which is not raised here. Second, the Commissioner's citation to Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) is distinguishable because in Ellison, the ALJ requested the medical records from the plaintiff, but the plaintiff failed to provide them. Ellison, 355 F.3d at 1276. Here, the ALJ received, but failed to consider, Dr. Primavera's

4

recommendation for IQ testing. (R&R at 13–14.) Finally, the Commissioner's citation to Sessaman v. Colvin, No. 4:14-CV-1086, 2015 WL 4393080 (M.D. Pa. July 15, 2015) is likewise distinguishable because in Sessaman, the ALJ considered "over 500 pages of medical records" and the plaintiff did not state what information was missing from the record. Sessaman, 2015 WL 4393080 at *7. In contrast, Judge Rueter detailed the flaws in the ALJ's analysis, including the absent information (e.g., Dr. Primavera's recommendation for IQ testing). (R&R at 13–15.) Accordingly, the Commissioner's objection on this point is overruled.

### B. The Manifestation of Intellectual Defects

The ALJ concluded that Plaintiff did "not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments." (R. 14.) Judge Rueter found that the ALJ's conclusion was not supported by substantial evidence, in light of Dr. Primavera's opinion and recommendations. (R&R at 12–14.) The Commissioner objects, arguing that Judge Rueter failed to consider Plaintiff's inability to show any deficits in adaptive function prior to age 22. (Objections to R&R at 5–7.) Plaintiff responds that he established this requirement through his mother's testimony, his testimony, and his psychologist's recommendation for IQ testing. (Resp. at 4–6.)

To determine whether an adult is disabled under the Social Security Act, a plaintiff "must demonstrate some 'medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period.'" Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (internal quotations omitted)). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

5

work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The regulations provide a five-step analysis to determine whether an adult is disabled. 20 C.F.R. § 404.1520(a)(4), (h); see also Burnett, 220 F.3d at 118–19. At issue here is the third step of the analysis, which requires the plaintiff to show that his impairment "meets or equals" the criteria for one of the "listed impairments" that are enumerated in the regulations. Burnett, 220 F.3d at 118 (citing 20 C.F.R. § 404.1520(d)). "To match a listing, the claimant must show that he meets or exceeds all of the criteria for the listed impairment." Burton v. Berryhill, 267 F. Supp. 3d 520, 524 (E.D. Pa. 2017) (citing Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992)).

The relevant impairment here is Listing 12.05, which concerns "intellectual disorders." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.05 (2016).[1] To establish the criteria in Listing 12.05, the plaintiff must show the following three elements: "Significantly subaverage general intellectual functioning; significant deficits in current adaptive functioning; and the disorder manifested before age 22." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00H.1 (2016). The first two elements (i.e., deficits in intellectual functioning and adaptive functioning) are satisfied when the plaintiff can show at least one of the following:

> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>     OR
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>     OR
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>     OR

---

[1] Although the criteria have since been updated, I reference the criteria for Listing 12.05 as it existed at the time of the ALJ's decision in 2016.

> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.05 (2016).

A claimant can satisfy the third element (i.e., the disorder manifested before age 22) as follows:

> We require evidence that demonstrates or supports (is consistent with) the conclusion that your mental disorder began prior to age 22. We do not require evidence that your impairment met all of the requirements of 12.05A or 12.05B prior to age 22. **Also, we do not require you to have met our statutory definition of disability prior to age 22. When we do not have evidence that was recorded before you attained age 22, we need evidence about your current intellectual and adaptive functioning and the history of your disorder that supports the conclusion that the disorder began before you attained age 22**. Examples of evidence that can demonstrate or support this conclusion include:
> a. Tests of intelligence or adaptive functioning;
> b. School records indicating a history of special education services based on your intellectual functioning;
> c. An Individualized Education Program (IEP), including your transition plan;
> d. Reports of your academic performance and functioning at school;
> e. Medical treatment records;
> f. Interviews or reports from employers;
> g. Statements from a supervisor in a group home or a sheltered workshop; and
> h. Statements from people who have known you and can tell us about your functioning in the past and currently.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00H4 (2016) (emphasis added).

Here, the ALJ determined that Plaintiff did "not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments."[2] (R. 14.) Specifically, the ALJ concluded that Plaintiff did not satisfy the criteria in Listing 12.05A because

---

[2] The ALJ also considered the criteria in Listing 12.06, which is not at issue.

7

he "is not dependent on others for his personal needs and is able to follow spoken instructions, although he has greater difficulty following written instructions." (R. 16.) The ALJ found that Plaintiff did not satisfy the criteria in Listing 12.05B because Plaintiff "did not have a valid verbal, performance, or full scale IQ of 59 or less" as there were "no IQ scores in the historical or educational record" and the "psychological consultative examiner, Dr. Primavera, PhD., found [Plaintiff's] cognitive functioning within the average range of intellectual ability." (R. 16.) Similarly, the ALJ found that Plaintiff did not satisfy the criteria in Listing 12.05C because there were no historical IQ scores in the record, Dr. Primavera found that Plaintiff's cognitive functioning was within the average range of intellectual ability, and the 2014 and 2016 mental examinations indicated intelligence in the average range. (R. 16.) Reiterating the reasons stated above, the ALJ concluded that Plaintiff did not satisfy the criteria in Listing 12.05D because Plaintiff was able to participate in the activities of daily living with mild restrictions (i.e., tending to his personal care and hygiene, cooking, driving short distances), had only moderate difficulties in social functioning, and exhibited only moderate difficulties in concentration. (R. 15.)

Judge Rueter determined that the ALJ's analysis regarding Plaintiff's mental impairments was flawed and not supported by substantial evidence because (a) Dr. Primavera opined that Plaintiff demonstrated cognitive defects that "may significantly interfere with [Plaintiff's] ability to function on a daily basis;" (b) Dr. Primavera recommended IQ testing that the ALJ did not pursue; and (c) the ALJ did not address that the medical records were internally inconsistent. (R&R at 12–14.) The Commissioner disagrees, objecting that Judge Rueter failed to address the fact that Listing 12.05C requires a showing of deficits in adaptive functioning prior to age 22, which the Commissioner argues Plaintiff failed to establish. (Objections to R&R at 5–7.) Plaintiff

responds that he established deficits prior to age 22 through his mother's testimony, his testimony, and his psychologist's recommendation for IQ testing. (Resp. at 4–6.)

I agree with Judge Rueter that the ALJ's analysis and Commissioner's objection conflate the IQ requirements for the first two elements (i.e., demonstrating significantly subaverage general intellectual functioning and significant deficits in current adaptive functioning) with the third element (i.e., the manifestation of the disorder before age 22). Section 12.00H4 specifically provides several types of evidence that can be considered when evaluating whether the disorder manifested prior to age 22, including statements of family members, medical treatment records, and academic records. The ALJ's analysis does not discuss this element separately, but instead integrates it into his analysis of the other two elements as to the non-existent IQ scores. (R. 14–16.) Additionally, I agree with Judge Rueter that the ALJ failed to consider (a) Dr. Primavera's recommendation for IQ testing and (b) Dr. Primavera's opinion that "[t]he results of this examination appear consistent with cognitive and psychiatric problems that may significantly interfere with [Plaintiff's] ability to function on a daily basis." (R. 293.)

Moreover, I find the Commissioner's citations unpersuasive. In Gist v. Barnhart, 67 F. App'x 78 (3d Cir. Apr. 23, 2003), the Third Circuit Court of Appeals found that sufficient evidence existed to support the ALJ's determination that the plaintiff failed to show her impairment manifested prior to age 22 where her only evidence was her own testimony that she had been in special education throughout her time in school. In contrast, the ALJ here did not consider any evidence as to the manifestation element. Indeed, the record indicates that Plaintiff provided evidence of manifestation, including his testimony, the testimony of his family members, work history, aptitude test scores, and records indicating that he was enrolled in special education classes. (R. 136–156.) And, the Third Circuit confirmed in Gist that the manifestation element is

9

distinct from the other two elements. Gist, 67 F. App'x at 82 n.2; see also Mastarone v. Berryhill, No. CV 16-1421, 2018 WL 783678, at *3 (W.D. Pa. Feb. 8, 2018) (following "the well-settled law in this Circuit that a claimant must show proof of deficits in adaptive functioning with initial onset prior to the age of 22").

Accordingly, the Commissioner's objection on this issue will be overruled.

## C. Judge Rueter's Purported *De Novo* Analysis

Because Judge Rueter found that the ALJ's analysis of Listing 12.05 was not supported by substantial evidence (as explained above), he recommended that the case be remanded for further consideration, emphasizing that the district court cannot conduct *de novo* review. (R&R at 14–15.) The Commissioner objects, arguing that Judge Rueter improperly reweighed evidence. (Objections to R&R, 7–8.)[3] Plaintiff has not directly responded to this objection.

A district court's review of the Commissioner's decision is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g). If the decision is not supported by substantial evidence, a district court must remand the case, as "[c]ourts are not permitted to re-weigh the evidence or impose their own factual determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2012).

Judge Rueter concluded that "upon remand, the ALJ may re-contact a medical source or order a consultative examination if he deems the evidence insufficient to make a disability determination." (R&R at 15.) The Commissioner objects to Judge Rueter's reliance on cases that,

---

[3] Relatedly, the Commissioner objects, arguing that Judge Rueter failed to credit other evidence that was considered by the ALJ in his analysis, such as Plaintiff's activities of daily living, the school and vocational assistance records, and Dr. Rohar's opinion. (Objections to R&R at 11–12.) However, the Commissioner has apparently misread the ALJ's findings because the ALJ's finding as to List 12.05 did not rest on any of the above evidence, but instead rested on medical records, testimony, and Dr. Primavera's report. (R. 14–16.) Accordingly, the Commissioner's objection is overruled.

according to the Commissioner, reflect Judge Rueter's improper *de novo* review. However, the Commissioner appears to misunderstand Judge Rueter's citations, which he properly cites in support of the premise that the ALJ may obtain expert testimony upon remand. See, e.g., Haynes v. Colvin, No. CV 14-1878, 2016 WL 5661555, at *9 (E.D. Pa. June 16, 2016), report and recommendation adopted, No. CV 14-1878, 2016 WL 5661934 (E.D. Pa. Sept. 29, 2016) ("Therefore, upon remand the ALJ should obtain expert testimony regarding the extent of Plaintiff's intellectual deficit and literacy, including updated testing if deemed necessary, to determine whether and to what extent limitations in this regard impact Plaintiff's RFC."); Sinkler v. Colvin, No. 3:14-CV-00463, 2015 WL 507215, at *6–7 (M.D. Pa. Feb. 6, 2015) ("The Social Security Regulations provide that, if the ALJ cannot get the information necessary to make a determination from a claimant's medical sources, a consultative examination may be purchased by the Administration.").

I also find the Commissioner's citations inapposite because they are factually distinguishable. See, e.g., Colombin v. Colvin, No. CV 16-311, 2017 WL 272029, at *4 (W.D. Pa. Jan. 19, 2017) ("Plaintiff was represented by counsel at the hearing, yet, during the hearing, his counsel did not ask the ALJ to order a current IQ test on Plaintiff's behalf or to keep the record open to secure an IQ test."); Davis v. Comm'r of Soc. Sec., No. 2:12-CV-05908-(CCC), 2016 WL 356075, at *4 (D.N.J. Jan. 28, 2016) (involving a claimant who "did not apply for benefits on the basis of a mental impairment as a source of her disability"); Smith v. Colvin, No. CV 15-1426, 2016 WL 6729120, at *3 (W.D. Pa. Nov. 15, 2016) ("Yet, at no time did counsel seek to keep the record open to secure a current valid IQ test or ask the ALJ to order one on Plaintiff's behalf or request any other additional evidence be obtained."); Harris v. Colvin, No. 1:13-CV-7130-RMB, 2015 WL 3648725, at *16 (D.N.J. June 11, 2015) (involving a claimant who applied for benefits

under the criteria of Listings 12.02, 12.04, and 12.06); Bethea v. Comm'r of Soc. Sec., No. 13-CV-3961 PGS, 2014 WL 4798815, at *5 (D.N.J. Sept. 26, 2014) (affirming the ALJ's decision to not order a psychological exam where the ALJ concluded that the plaintiff had a disability based on the school records that showed a "low average" range of intelligence).

Accordingly, the Commissioner's objection as to this issue is overruled.

### D.     Expert Reports

As noted above, Judge Rueter found that the ALJ failed to consider that Dr. Primavera recommended IQ testing and concluded that "[t]he results of this examination appear consistent with cognitive and psychiatric problems that may significantly interfere with [Plaintiff's] ability to function on a daily basis." (R&R at 13–14.) The Commissioner objects to this finding, arguing that Judge Rueter erred in reweighing the evidence because review of the ALJ's judgment is deferential where the consultative examiner's report is mixed. (Objections to R&R at 8–9.) Plaintiff responds that Judge Rueter properly concluded that the ALJ's decision failed to consider Dr. Primavera's entire report. (Resp. at 7–8.)

Generally, the ALJ must explain the weight given to physician opinions and the degree to which a claimant's testimony is credited. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011) (citing 20 C.F.R. § 404.1527(f)(2)(ii)). I agree with Judge Rueter that the ALJ erred by failing to explain the weight given to Dr. Primavera's report, particularly in light of the fact that the ALJ (a) did not consider the report in its totality, and (b) failed to address Dr. Primavera's recommendation for IQ testing. (R&R at 13–14.) Accordingly, the Commissioner's objection is overruled.

### E. Medical Records

The ALJ concluded that Plaintiff did "not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments," relying in part on Plaintiff's medical records. (R. 14.) Judge Rueter found that the medical records were internally inconsistent, where some portions indicate "average" intelligence, and others indicate "borderline" intelligence but that there was "no formal testing." (R&R 14–15.) The Commissioner argues that Judge Rueter's conclusion about the medical records constitutes an impermissible reweighing of evidence. (Objections to R&R 9–11.)[4] Plaintiff does not directly respond to this objection.

"Where the [ALJ] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ray v. Astrue, 649 F. Supp. 2d 391, 401 (E.D. Pa. 2009) (quoting Benton for Benton v. Bowen, 820 F.2d 85, 88 (3d Cir. 1987 (alteration in original)). "Although the ALJ has 'statutory authority to choose [which evidence] to credit' among conflicting evidence the ALJ cannot reject evidence for no reason or the wrong reason.'" Id. at 401–02 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)). "If the ALJ does not provide these reasons for rejecting certain evidence, 'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored' and cannot tell if the ALJ supported the decision with substantial evidence." Id. at 402 (quoting Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)). A district court can set aside an ALJ's determination that fails "to

---

[4] The Commissioner separately objects that Judge Rueter improperly recommends remand for the ALJ's failure to articulate his reasons for attributing greater weight to Dr. Rohar's opinion than to Dr. Primavera's opinion. (Objections to R&R at 12–16.) I find that the ALJ did not sufficiently explain his decision to give more weight to one expert over the other where his explanation is one conclusory sentence that he "gives greater weight to the opinion of Dr. Rohar, especially relative to the ability to make occupational adjustments." (R. 19.) Accordingly, the Commissioner's objection on this point is likewise overruled.

13

mention and refute some of the contradictory medical evidence before him." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000). The ALJ "may properly accept some parts of the medical evidence and reject other parts, but . . . must consider all the evidence and give some reason for discounting the evidence [the ALJ] rejects." Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994).

I agree with Judge Rueter and find that the ALJ erred in failing to provide any reasons for crediting or rejecting evidence and failing to explain inconsistencies in the medical records. Accordingly, the Commissioner's objection on this point is overruled.

## IV. CONCLUSION

For the foregoing reasons, I conclude that Defendant's objections to Judge Rueter's R&R should be overruled.

An appropriate Order follows.